GLADNEY, Judge.
This suit was instituted by VeEtta Wim-bush as the curatrix of her husband, Robert Wimbush, against Eudoxie Jones, for the purpose of annulling a notarial act of sale executed on July 1, 1960, wherein Robert Wimbush conveyed eight acres of land for a stated consideration of $250.00. The grounds relied upon by plaintiff are twofold and charge that at the time of the sale her husband was mentally incompetent and, alternatively, the consideration received by vendor was less than one-half the value of the property. The trial judge rendered judgment in favor of the defend *705 ant and dismissed the suit. Plaintiff has prosecuted this appeal.
Robert Wimbush, whose competency is questioned, is an eighty-two year old colored man who formerly was actively engaged in farming and preaching. Some years ago he retired and has lived on a tract of land north of the Town of Grambling, Louisiana, the site of a negro college. Adjacent to the Wimbush property is land owned by the defendant, Eudoxie Jones. The latter negotiated with Wimbush for the purpose of acquiring eight acres adjoining her property. These negotiations culminated in the sale of July 1, 1960. The property in question was acquired prior to the marriage of Robert and VeEtta Wimbush and consequently is not part of the community of acquets and gains. VeEtta Wimbush brought interdiction proceedings against her husband and was issued letters as curatrix on September 22, 1960. This suit was instituted on September 23, 1960.
The defendant avers the true and actual consideration paid for the land was $800.00, $600.00 of which was in cash, and $200.00 represented by a promissory note, and by way of explanation for the insertion of the $250.00 figure in the act of sale declares this was done upon the request of Robert Wimbush who was afraid that if the true consideration was revealed, his status on the welfare rolls might be affected. During the course of the trial the defendant orally amended her answer as allowed by Article 1154 of the LSA-Code of Civil Procedure, wherein she alleged the effect of the recitation of the incorrect consideration would give rise to a legal fraud if relied upon by plaintiff for the purpose of voiding the sale on the grounds of lesion. The defense, however, rests mainly on grounds that Wimbush was competent at the time of sale and that the act of sale was supported by adequate consideration.
Three principal questions are presented for resolution, viz.: Was the vendor mentally incompetent? Does Article 2276 of the LSA-Civil Code allow parol evidence to show the real consideration between the parties is greater than that recited in the authentic act of sale? Was the consideration given for the property less than one-half its market value to be determined as of the time of the sale?
The foregoing issues were presented in the trial court and although written reasons for the decision of the trial judge were not assigned, we must assume he found Robert Wimbush was in possession of his mental faculties and competent to execute the contract of sale, and that the consideration supporting the contract was adequate, hence the doctrine of lesion beyond moiety was without application.
The evidence adduced to show the mental incompetency of Wimbush is conflicting. A number of lay witnesses and four doctors gave their opinions as to whether or not Wimbush was mentally sound when he sold his land to the defendant. The testimony of some of these witnesses shows that on stated occasions Robert Wimbush exhibited signs of senility, and equally strong testimony was advanced by others to the effect that Wimbush was not incompetent but in possession of his normal mental faculties. Wimbush himself, was examined on the witness stand at length by counsel for both sides. His testimony sets forth with suprising clarity his recollection of the transaction with Eudoxie Jones and convinced the trial judge that he entered into and completed the transaction for the sale of the eight acres of land while in possession of his mental faculties and with knowledge and understanding of his own actions in the matter. Our appraisal of the testimony with reference to the competency of Wim-bush is in accord with the finding of the judge a quo. LSA-C.C. Art. 402 stipulates as to the validity of acts performed prior to interdiction, and states:
“No act anterior to the petition for the interdiction shall be annulled, except where it shall be proved that *706 the cause of such interdiction notoriously existed at the time when the acts, the validity of which is contested, were made or done, or that the party who contracted, with the interdicted person, could not have been deceived as to the situation of his mind.
“Notoriously, in this article, means that the cause of interdiction was generally known by the persons who saw and conversed with the party.”
As to proof or incapacity, LSA-C.C. Art. 1788(3) contains this provision:
“But in order to prevent imposition, it is not enough to make the proof mentioned in the last rule; it must also, in that case, be shown that the person interdicted was known by those who generally saw and conversed with him, to be in a state of mental derangement, or that the person who contracted with him, from that or other circumstances, was acquainted with his incapacity.”
It was incumbent upon plaintiff to meet the burden of proof by producing convincing evidence consistent with the aforementioned legal requirements. We find she has not discharged this responsibility.
Counsel for plaintiff appellant during the trial objected to the admissibility of parol evidence offered for the purpose of showing that the consideration paid by VeEtta Jones to Robert Wimbush was $800.00 rather than the sum of $250.00, as stated in the act of sale. The obj ection was predicated upon' LSA-C.C. Art. 2776, which reads:
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
Our courts in giving application to the rule have refused to permit the introduction of parol evidence where its effect would be to destroy the validity of an authentic act. Templet v. Babbitt et al., 198 La. 810, 5 So.2d 13 (1941); Harang v. Smith, 229 La. 865, 87 So.2d 10 (1956). Counsel for appellant also relies in support of his objection, upon Girod v. Vines, 23 La.Ann. 588 (1871), and Johnson v. Johnson, 191 La. 408, 185 So. 299 (1938), but we find these cases inapposite. Thus, in Johnson v. Johnson, the purpose of parol evidence was to show that the recited consideration of $500.00 was not received by the vendor. Had such evidence been permitted, its effect would show that the sale was without any consideration and the validity of the deed thereby destroyed. In contradistinction the parol evidence tendered herein only purported to prove the true or actual consideration, and its effect would be to support and not to destroy the validity of the instrument. Girod v. Vines, supra, is likewise not analogous. Therein parol evidence was offered for the purpose of showing that the value of personal services was greater than that disclosed in the deed. In excluding the evidence, the court said:
“ * * * Had they intended that the estimated value of the personal services of the vendee were a part of the price, in addition to the sum paid, they should have so expressed the fact and the amount in the act * * * The defendant does not offer to prove that there was error in stating the price to be $100 when it should be $600, as was actually agreed on, but another and further consideration, to-wit: her services, which, she alleges, are worth $500."
Our courts have consistently construed Article 2276 to allow parol evidence when it tends to support and not destroy the authenticity of the act. Dickson v. Ford, 38 La.Ann. 736 (1886); Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960); Collins et al. v. Brunet, 239 La. 402, 118 So.2d 454 (1960). The trial court allowed the defendant herein to show that $800.00 was paid for the property and was the true consideration. This sum was attested to by both vendor and vendee. Accordingly, *707 the evidence serves to support the validity of the act of sale and is not prohibited by the codal article.
Finally, it is contended by appellant the consideration, even if proven to have been $800.00, was less than one-half of the market value of the property as at the time of the sale, and the action is governed by LSA-C.C. Arts. 1860, 1861, 1870, 2589, 2590 and 2591. Also cited in support of this proposition are Schouest v. Schouest et al., La.App., 30 So.2d 871 (1st Cir. 1947) and Blaize v. Cazezu, 210 La. 176, 26 So.2d 689, 692. These cases affirm the rule stated in the codal articles that a vendor may rescind the sale when the price paid is less than one-half the value as established at the time of the sale. Also, our attention is called to the following expression in Blaize v. Cazezu:
“The uses and capabilities of the property, the prices at which similar property in the vicinity is sold or offered, knowledge or observation of the growth and development of the town or city in which the property is situated, a general knowledge of trade and business and of the commercial advantages or prospects of the place are all matters which are more or less taken into account by an intelligent witness in forming his opinion as to the value of a particular piece of property.”
In the instant case the property in question is pasture land, unimproved, separated by other property from a public road, and without utilities. The land lies outside the corporate limits of Grambling, a negro college town of some two thousand population, and is four blocks distant from the nearest subdivision. A number of witnesses testified on behalf of plaintiff that the value of the Wimbush property in 1960 ranged from $4,000.00 to $12,000.00, and those testifying on behalf of the defendant approximated its value as being $800.00. One of defendant’s witnesses, Thomas Lewis, appeared well qualified to give an opinion on the value of the land. He estimated its worth at $100.00 per acre. Robert Wimbush testified he was satisfied with the price received for the land. A similar question was considered by the Supreme Court in Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956), wherein it held that an action to rescind a $5,000.00 sale of ten acres of land on the ground of lesion beyond moiety should be denied. The evidence therein disclosed the land at the time of the sale was used as pasture. Its valuation as fixed by plaintiff’s witnesses was based on an estimated value of the property as a subdivision. The court said such testimony was conjectural and insufficient to establish with legal certainty plaintiff’s claim of lesion beyond moiety and pointed out that the rule to the effect that market value of property is to be determined by the highest and best use to which land may be put, is not applicable to suits by a vendor against his vendee for rescission of the sale on the grounds of lesion. Noting that the property which sold for $5,000.00 was estimated by two witnesses as being worth over $11,000.00, the court made the following comment:
“Their testimony is based on the ground that the highest and best use to which the land may be put would be to develop a subdivision. They estimated how much dirt, culverts, and gravel, etc., would be used in developing the property into a subdivision; in other words, their estimate was based on the value of the land if developed into a subdivision. The land at the time of the trial of the case had not been developed into a subdivision, and testimony as to the cost of development is highly speculative and could serve no criterion in fixing the value of the land in a suit of this nature. At the time the land was sold, it was being used as a cow pasture and, under the provisions of Article 1870 where lesion is urged to set aside a sale, the value of the property must be fixed in the *708 state at which it was at the time of the contract.”
It is our appreciation of the evidence that the witnesses testifying on behalf of the plaintiff predicated their opinions on values contingent upon improvements and availability of lights, water, gas, roads or streets, landscaping, etc., which must be considered as costs in the development of the property. Wimbush’s property had none of these improvements and the testimony of those witnesses who estimated the value of the property according to its status as of the date of sale should be relied upon in fixing the true market value of the property. The trial judge was of the opinion that the valuation as determined by defendant’s witnesses was more trustworthy and we are of the opinion that in this respect he was manifestly correct.
For the foregoing reasons the judgment from which appealed is affirmed at appellant’s costs.